We have two cases to be submitted today on oral argument, and we begin with United States v. Bopp. Mr. Brown. Thank you, Your Honor, and may it please the Court. My name is T.W. Brown, and I'm here today to represent the appellant, Adam Bopp. This Court should resolve Mr. Bopp's appeal with the following two-step analysis. First, the nature of the question presented, one of law rather than fact, resolves the appeal waiver's issue in Mr. Bopp's favor. Second, the indictment's specific allegations provide a clear answer to the question presented. Here it is. The four individuals named in the District Court's restitution order fall outside the scope of the offense alleged in Count I, and therefore cannot fit within Section 2259's offense-specific definition for the term victim. Since my arguments on the merits inform this Court's analysis on the appeal waiver issue, I'll begin there. The government alleged in Count I a violation of 18 United States Code Section 2252, uppercase A, subsections A5b and B2. By itself, subsection A5b criminalizes the knowing possession of any material that contains an image of child pornography and requires a connection between that material and interstate commerce. Subsection B2 defines a fourth element applicable here. A defendant who commits the elements defined in A5b is typically subject to at most a 10-year term of imprisonment, but subsection B2 sets out an enhanced maximum 20 years if any image of child pornography involved in the offense involved a prepubescent minor or a minor who had not attained the age of 12 years. The first paragraph of Count I charged a complete violation of subsections A5b and subsection B2. Its allegations closely tracked the statute's language and accounted for each of the essential elements. The introductory clause, in turn, particularized the date and location of the offense at issue. So the first paragraph thus contained the elements of the offense charged and fairly informed Mr. Bopp of the charge he would need to be prepared to meet if he proceeded to trial. In similar fashion, if Mr. Bopp were later indicted for the same offense, he could rely on the indictment and record evidence outside the court. The argument made below and the argument you're making now, am I correct, it's really just one of grammar? That's part of it, yes, Your Honor, yes. I mean, because you're agreeing that if it had said comma, for example, the prepubescence, then he's on the hook for all of the 25,000? Yes, Your Honor. I do agree. So it is just the language? Yes, Your Honor. It's the specific language of the second paragraph in Count I. But Count I alleged, am I correct or am I wrong, that the A provision, that's the crime of conviction. The B prepubescent images, those are sentencing enhancements, correct? And so here's the hard question to you, I think. If the indictment hadn't even included reference to the enhancements, just said exactly camera or material containing child pornography, at that point the court could order restitution for every single woman or girl, right? Yes or no? If there were no allegation as to B2? Well, they just hadn't gone on to even list the enhancement images. If the indictment were broadly worded? No, just worded exactly as it is, but it stops before mentioning any of the prepubescent. Yes, Your Honor. If you just had that first paragraph, you're correct. You excise the language. You don't have to excise it. There's language that says that involved the prepubescent minor. So you're saying essentially what happened was your client pled, thinking that the total sum of facts relevant to him were just the prepubescent images? No, Your Honor. He pled thinking that the facts relevant to the offense were those alleged in the indictment. Right. But the indictment says material containing, and then in the factual resume in his stipulation, the third one in particular, he distinguishes between all the files and the prepubescent images giving him an enhancement. So he knew. He never said, oh, I want to withdraw from this guilty plea because I had no idea those other 25,000 images would count. Fair or not? Not fair, Your Honor, for these reasons. So the factual resume, in fact, the portion you've mentioned, paragraph three of the stipulated facts, has to be read in context. And that portion of the factual resume goes to mens rea, not actus reus. The two paragraphs before that, like the first paragraph of the factual resume, tracks the indictment's allegations verbatim, and the second paragraph of the stipulated facts refers back to the images that were described in paragraph one. Now, I want to go back to something the Court mentioned with regard to the necessity of pleading the prepubescent images. So under Prendy, there had to be some allegation in the indictment to at least put Mr. Vop on notice that that was out there, right? And we have that in the first paragraph. It says that he possessed material that contained an image that involved prepubescent minors. Paragraph one, therefore, alleged a complete offense by itself. And if we just had paragraph one, you're right. I would not be here today. This likely would have been an Anders brief. But we have paragraph two, and we have to account for it. Because paragraph two, and going back to sort of the demarcation between— You're saying paragraph two limited the government to just those four images? With regard— Those became the only victims of his crime of conviction. But if that's true, why would count one have said violates the A subsection and the B? It's artfully written, but I think the government put it in there in an abundance of caution so that your client pleading admitted to the big enhancers. But I don't see anything in there saying, and now we're just not going to notice the 25,000 other girls. Well, Your Honor, I push back on that for a few reasons. First, we can't necessarily disaggregate the prepubescent minor allegations from the allegations that tie those images alleged in the indictment to that subsection A5B element. Because the A5B element, the actus reus, is the possession of material that contains an image of child pornography. That's one element with two subparts. We need material, and we also need child pornography. The indictment—so the statute has a parallel structure there. And the indictment follows that structure in both paragraphs one and paragraph two. In both cases, you have an allegation as to material and the child pornography, which you need to state a claim or state an offense under this subsection. Now, with regard to that second paragraph, if we just have that first paragraph, you're right. This is a very broadly worded offense. It's actually exactly the way that the offense is worded in Winchell, which allows the district court—well, allows the parties to pick and choose between various factual bases to support the guilty plea. If they were to go to trial, it would give the government great freedom in terms of how to prove up both the offense of conviction and the images of prepubescent minors. But all that comes off the table as soon as the grand jury returns an indictment that specifies the allegations as to both A5B and B2. They're connected because paragraph two says— You didn't bring a constructive amendment argument. There would be no need to, Your Honor. I think that the factual resume tracks the indictment. In fact, in my briefing, I referred to it as perfect symmetry between the two. Okay. I see that point. Yeah. So the issue doesn't come up for anyone until we get to sentencing. And let's talk a little bit more about grammar, Judge Higgins, and you brought that up earlier because grammar is very important to this argument with regard to the interpretation of that second paragraph. So to begin, the second paragraph begins with the adverb specifically. And as an adjective, specific means something that's exactly named or indicated or explicitly set forth or definite. In the second paragraph, that adverb comes at the very beginning of the second paragraph and is separated from the rest by a comma. That means the adverb modifies the sentence in the paragraph in its entirety, not any one verb or any one subpart of an element. So that means that that paragraph specifically alleges not just that he possessed one phone but that that phone contained four specified images. That's the only fair reading of the indictment. And I think that one other grammatical point is relevant here as well. So in the statutory text, we have material that contains an image of child pornography. So we have the word that, the pronoun that, which connects the noun material to the following clause, that contains an image of child pornography. That means it's a restrictive clause. So it is necessary to identify or define the noun that comes before material. So that shows that these two subparts of one element are inextricably connected with regard to both the statutory definition and with regard to the way the offense was charged here. The specificity of those allegations matter. Go ahead, Judge. Well, let's say you're right, and I'm going to come back to that really difficult stipulation point because your client and he could still – he got a benefit, right? They dismissed what? Counts? That's right, Your Honor. Okay. So he gets a benefit. He could still come into the plea and say, oh, and by the way, I want to repay other victims. So when I look at – I'm going to read aloud stipulation three. So put aside your primary argument, which I think is a very difficult, interesting one in terms of charging language the government could have avoided. But then he comes to – he gets the plea and he goes to the rearrangement. Bob admits he knowingly possessed child pornography and that he knew the files depicted real minors. Bob also knew that some of the images depicted a prepubescent minor. At that point, isn't he agreeing the offense of conviction involved prepubescence plus other files with child pornography? I don't think so, Your Honor. I think what he's admitting is that he knew that the files stipulated in the factual resume and specified in the indictment included prepubescent minors. So they're tying the mens rea to the images that were alleged. He says also – okay. But there's no reason that some could refer to his knowledge as a subset of those four images or it could refer to his knowledge of a subset of images on the broader catalog recovered. I'm just curious. Why not move to withdraw before the sentence is pronounced and just say, you know what? I had no idea I was going to be paying $25,000. I just didn't know it. I want out. So there's no need to withdraw given the specificity of the indictment's allegations. Yeah, I know. That's a good argument. So ultimately – and this actually goes to the appeal waiver, which I'll jump to with your allowance. So the nature of these questions, the nature of the claim presented proves that we're not talking about any factual finding. Mr. Bobb has not come here to talk about whether or not the factual findings underlying the district court's order were clearly erroneous. Instead, he's come to you with an argument about the interpretation of text. That interpretation turns on the meaning of 2259C4, the often specific definition of the victim, and the indictment. Actually, Your Honor, before I get to the appeal waiver, I want to return to another point about the factual basis. So even if the parties had wanted to, the specificity of the factual allegations makes it impossible for them to broaden the basis of guilt alleged in the indictment. And on that point, we have RISR, which involves a different statute but involves exactly that problem. When you have a specifically worded statute, in that case it was 513, which criminalizes the use or possession of counterfeit securities, allegations as to any element, purveyment or otherwise, limit the permissible factual theories of guilt that the parties can cobble together at a guilty plea hearing or that the government can rely on in front of a jury. So in that case, we have an – we have an indictment. A theory of guilt, yes, but not victims for restitution. I think there – Your Honor, the victims for restitution are necessarily circumscribed by the scope of the indictment's allegations. So if we have – if we've circumscribed the indictment's allegations, that necessarily puts limits on the district court's authority as to the extent of the defendant's permissible restitution obligation. And for that point, I would just point out the parallel analysis that we see in the constructive amendment cases, Styro and RISR. I probably ought to get to the waiver just from my standpoint. Absolutely, Your Honor. It's a difficult issue for me. No, no, let's go. Waiver and restitution is a complicated issue. I agree, Your Honor. I have two and a half minutes. Let's see what I can do. So in the briefing, I have presented it as a distinction between questions of fact on the one hand, which received a NOVA review from this Court, and questions of – pardon me, questions of law on the one hand, NOVA review, and questions of fact, which received clear error review. So for a long time, we didn't really have authority on both sides of that question. We had Winchell, we had Leal, and we had Kim, all of which raised questions of fact about the interpretation of the statute or the scope of the indictment's allegations. We now have Alfred and Meredith as well. And I think Alfred and Meredith help us in that they define the parameters of the appeal waiver analysis, and I think they make it clear that Mr. Boff's claim comes out on the side that he is, in fact, challenging a sentence that exceeds the statutory maximum. And for that point, I would just contrast the nature of the claim that he has raised with the nature of the claims that this Court considered in Alfred and Winchell. In Mr. Alfred's case, he presented his claim as one of paroline error, but this Court rejected that framing as inconsistent with the record. That was so because the district court had, in fact, ruled on a paroline objection at sentencing, which proves that it had at least attempted in good faith to stay within the limits of 2259. And ultimately, that's the same type of—that's a different claim from the one that Mr. Boff has advanced here. So Mr. Alfred is ultimately talking about the application of a statute, the application of a rule that everyone agrees upon. Mr. Boff is doing something very different. He's going back to the front end. He's asking this Court to reconsider the district court's interpretation of both the indictment's allegations and its authority under 2259c4 to award restitution in the first place. So, you know, it's the distinction between interpretation and application. It's also the distinction between input and output. We're not talking about the output. We're not challenging the number that the district court awarded as improper. And, in fact, we couldn't if these are victims because the district court just awarded the statutory minimum. What we're doing is very different than that. Like Mr. Leal, like Mr. Kim, like Mr. Winchell, we have instead attacked the district court's authority in the first place to order restitution as it did, and that means the district court—if we're right on the merits and given the nature of our claim, that means we're arguing that the district court's restitution order was expressly foreclosed by statute. That's the kind of claim that survives an appeal waiver. That's all I have, Your Honors. Thank you. You've saved time for rebuttal. Thank you, Mr. Brown. Ms. Grandin. Good morning. May it please the court. Amber Grand on behalf of the United States. I think the fault in the appellant's argument can be boiled down to this. The elements of an offense and the facts that are pled in the indictment to support those elements is a distinct inquiry from the conduct underlying that offense, which is fairly assessed by the district court at sentencing. As the court in Ayling said, after guilt has been established, whether by jury verdict or guilty plea, the district court is free to assess the conduct of the offense and of the defendant in determining the appropriate sentence. There's no question in this case as to the factual sufficiency of the indictment and to Mr. Bopp's guilt under those elements. The only question here is whether the conduct underlying his offense of conviction fairly encompassed the images of the victims who were awarded restitution. And the government believes that based on the plain language of the statute and the record before the court, the answer to that question is yes. It's helpful to agree that no sentencing court can award restitution to an individual who isn't a victim under 2259. That would be an unlawful sentence. Let's say the district court here said, you know, I feel sorry for the victim of his prior child pornography. Right. And I'm just going to award money to her. That would be an unlawful sentence. You wouldn't be standing on the appeal waiver. I agree with that. Okay, so here his argument is, and it was below this, it's really, well, you charged it this way so you're stuck with it because you charged that the crime of conviction is material that contains an image of child pornography that involved a prepubescent girl. So by writing it that way, you limited your offense of conviction to prepubescent girls. And I would contend that that argument goes to the scope of offense conduct and not the scope of the elements of the offense, so to speak. The offense of conviction here is possession of the material. As the court explained in Warner, the actus reus is the material. Whether we're talking about a magazine, a cell phone, a computer, it's the material. What makes that material criminal is the presence of at least one image of child pornography, and in this case prepubescent child pornography. But the material is the crux of the offense. It's the possession of the material. And the indictment here alleges knowing possession of that material. That's the offense. You'd allege material containing only the following prepubescent girls. That's a different inquiry, but as Your Honor noted to the appellant, the statute charges possession of the material. I know, but the government can limit itself. It can limit. I agree the statute would have allowed you to do it, but if the indictment language reads, and this defendant, this is all you're on notice of, you don't need to expect that when you get to sentencing, all of a sudden you're going to owe, what, 25,000? I mean, under your theory, if Maine Justice had all 25,000 girls as victims, this man could have been on the hook for millions. With an appeal waiver, he can't even challenge that. Do you see my point? Every single image on that phone. That is exactly correct. Because his conduct in possessing that phone with those images is what approximately caused each and every one of those victims harm. And he pled guilty to the conduct of possessing the phone with their images on it. Of course, we don't know if the grand jury went through and confirmed. Each one would have to be child pornography. We don't know what happened to the grand jury. At rearrangement, I assume no one presented any evidence that each image had child pornography. I don't think the district court ever had that evidence. So how do we know that this guilty plea is even valid as to every single girl? So the guilty plea, of course, is to the elements of the offense here, not to those 25,000 images are not an element of the offense. They're offense conduct. There was evidence in the PSR that each, it's actually 28,000 images, that each of those met the federal definition of child pornography. I think the sum total of images was over 200,000. But there was unrebutted evidence in the PSR that they met the federal definition. But the presence of those images doesn't go to his culpability for the offense. It goes to the scope of harm that was caused by the undisputed offense. But the only question before us is were the victims that the district court told him he's got to pay, are they victims of this crime that he pled guilty to? Of the conduct underlying his offense of conviction. And the offense of conviction is possession of the phone, and the conduct underlying that offense is every single image on that phone. That's in line with Huey. It's in line with Paroline. And as the court cited, it's in line with this court's decision in Bailey, which is analogous in that in Bailey the indictment charged the possession of numerous pieces of stolen mail. The factual resume elucidated one item of stolen mail. And the court actually said, look, our precedent on restitution is pretty clear. There are a couple of different ways it's limited. Temporally, you can award restitution outside the scope, the time period in the indictment. You can't award it for offense conduct that's not charged. And if you have a case where they were indicted for a broader scheme and pled to something more narrowly, you have to make sure that your restitution ties to what they actually pled to. Nowhere in that decision did the court say you're tied to these specific facts in the indictment, facts that were pled to establish an element of the offense, not to establish the scope of the offense, the element of the offense. The listing of the four prepubescents was just manner and means, or was it just putting in the B enhancement factors, which I don't even know if you have to do? It's just for B-2. Now, B-2 could have been in the factual resume. The prior conviction was in the factual resume. But out of an abundance of caution, the government put in specific images to support the sentence enhancement to increase the statutory maximum from 10 to 20 in the indictment. And in the wording of the first paragraph, it treats prepubescent as an element of the offense. Is the wording, the specific wording of this indictment, is it typical? It is. I mean, in these cases where the government is charging possession of material containing child pornography and the enhancements in subsection B, is this wording typical? I've seen it a number of ways. I would say that this is certainly not the first time I've seen it charged this way, and I've also seen indictments that just have that first paragraph, and then the more factual specific allegations come later in the factual resume. But the factual resume, we agree, has to be in tandem with the indictment. The factual resume has to plead facts sufficient to support each element of the offense. Factual resumes are not intended to account every single fact that is relevant to offense conduct, nor could they. That's up to the sentencing court, after guilt has been established, to assess the total of offense conduct. And I would note that here the PSR did exactly that. It held Mr. Bob accountable for the types of images, whether they contained masochistic images. It held him accountable for possessing over 600 images. Those were not included as relevant conduct. Those were offense conduct because his offense was possessing the material, and each of those offense facts ultimately went to his sentence. And he did not object to that PSR? No. And so restitution, being part of the sentence, would then fairly consider the same offense conduct. As the court noted in the factual resume, he admitted to knowingly possessing the phone, that some of the images on the phone had prepubescent imagery, and that he did so with an item that entered interstate commerce. As a result, not a single element of his guilt is in question. And that's why we differ from Resor, because in Resor, the interstate commerce element was factually unsupported despite the guilty plea. And the government had argued if you swap who the victim is from a church to a bank, we can satisfy that element. But that would have amounted to a constructive amendment, right? Because it goes to an essential element. We don't have a single element that is in dispute here. The only question here is what was the scope of conduct underlying the offense of? The element is the material that contains? Yes. And you would have to say that contains child pornography. You did. Yes. The problem here to me comes when the sentence continues, that is, and lists. With the specificity, right? Because on the one hand, I can read it as, well, here are going to be the sentence enhancers. On the other hand, it's, no, we've narrowed our crime of conviction, and the only victims are the four that follow. Right. And I would just highlight the distinction between A5B and A2, charged in count two. A lot of these offenses are charged as possession, receipt, distribution of specific images. The government is, of course, tied at that point to that specific image. I don't disagree with the reply brief that says if we had gone to trial, we would have needed to prove these four images, because it goes to the guilt on the elements. It doesn't go to the scope of his conduct. The scope of his conduct included everything on the phone. And at no point did he object at the rearrangement. The court read the elements of the offense and did not list the specific images. The factual resume said some of the images are prepubescent. And then the PSR took into account all of the images when determining his advisory guideline range. There was no objection raised. There was no attempt to withdraw the guilty plea because the indictment was construed in a way that went against his understanding. And as a result, the record supports the government's position that the offense here was possession of the material, even if the indictment pled for specific images to satisfy B2. The appellant doesn't cite any cases holding, nor could he, that specific facts pled to support an element limit the scope of the offense. The closest he gets is fraud cases. And in fraud cases, Adams and Chaney, you have to look at the scheme. Scheme as an element of the offense is determinative of both guilt and restitution. But we don't have a scheme here. We have possession of the phone. It's not disputed what his offense conduct was. And he doesn't dispute that the victim's images were on that phone. He doesn't dispute that his conduct in possessing the phone proximately caused their harm. And he's never taken issue with the quantum of harm that was found by the district court. So the only way he wins in this case is if the court takes the position that facts pled to satisfy an element necessarily limit the scope of offense conduct that can be considered for sentencing. It has never done that, and it should not do that here. All right. I have to just think about that a little bit. Right, because you are characterizing the four images then as necessary to prove the element of the offense. You're not saying they were listed just to get the B enhancement. So what you charged and how you limited it was essential to an element. That might have been inartful. Okay. They were pled for B2. Okay, for the enhancement. Those images didn't prove the necessary element of child pornography. It could have been other images. Right. Material was your necessary element. If we had tried to prove up a laptop or flash drive, you've got a different issue. These were images that were on the phone. The phone is the material. He pled to possessing the material. I think this dovetails with our position that the appeal waiver would apply. The appellant claims that this is a scope of the indictment question, but we're not talking about the factual sufficiency of the indictment allegations. We're talking about whether these victims fell within the scope of offense conduct, and that was a sentencing factor determined by the district court after his guilt had been established. Do you agree with him that, really, here, this is the rare case where the merits would control whether the appeal waiver controls? Because if he's right, they're not victims, and then it's an unlawful sentence. If he's right, the court would have to find that his conduct in possessing the phone didn't cause them harm, because 2259 defines victims as anyone harmed by a commission of a crime under that chapter. And then Paroline takes that a step further and says the crime is the offense of conviction and cites Huey, which says that includes all conduct underlying the offense. So their presence on the phone necessarily implicates them under 2259. I'm not sure I agree with that, because if he's right, and you limited what the offense of conviction was to these four victims, and then a sentencing court comes and says, I'm going to give it to others, maybe even the one from the prior offense, you wouldn't be asserting the waiver, I don't think. You would essentially be construing this as a possession of four images case, as opposed to a possession of a phone case. Yes. And so I don't disagree with you there, but I do disagree that that's what the indictment charges, especially when you construe the caption with the first paragraph, with the factual resume and with all of his conduct. You agree also that waiver applied to restitution is difficult. And this case points it out, because he did plead, but no one, even the government, knew who was going to be owed restitution. It took four addenda, right, I think four, to the PSR. So well after he pled, we're finally getting clarity from Washington as to who the victims are that he's going to have to pay. Right. So it's not the waiver usually the government invokes when it's, hey, wait, this was part of the deal. You can't now attack something we relied on. This isn't that. It's not a gotcha situation. I guess my hangup is that identification of those victims doesn't go to his culpability under the statute. It doesn't go to his guilt under the offense. We're not playing gotcha down the road by identifying victims. That's just sentencing conduct. He pled to the offense. He admitted the elements of the offense, the nature of the images, how many there were, who the victims were. From start to finish, he said, I pled to only these victims. That's never changed. And there's nothing in the guilty plea agreement itself says there are a lot more. The indictment sure doesn't say there are a lot more. It just says material. It says the material. Right. And then he gets to sentencing, and all of a sudden after four addenda, there are more. And he immediately says, that's not what I thought. But anyway, this is, I'm usually going on a detour. I think his position doesn't rest well with his failure to object to the way that the victims were taken into account for other sentencing reasons. Restitution is a component of this sentence. This argument, all of his arguments have focused on culpability and guilt and elements in the indictment. And that's just a completely separate inquiry from the sentence that is imposed and the facts that the district court is entitled to consider when imposing that sentence. And you either object to consideration of those images wholesale or not at all. And so the government's position in the district. Right. And so the government's position all along has been you pled to the phone. Every child with an image depicted on that phone is a victim and is entitled, required, to receive restitution under 2259. I would say that that proposition is actually laid out in the Stouffer, I believe it's in the Stouffer case, where the court said that every single victim who had an image transported in interstate commerce, every single one is a victim under 2259. And that's the government's position in this case. If there are no further questions, the government would ask the court to affirm Mr. Bobb's sentence in all respects. Thank you, Ms. Grand. Mr. Brown, your rebuttal. Thank you, Your Honor. The government made a few points about the conduct underlying the offense of conviction, but the offense of conviction circumscribes the conduct that is available both for the guilty plea and for restitution. That's true with regard to non-elemental facts like an inman, which is a fraud case, but it wasn't the scheme or the transactions alleged that circumscribed this court's authority to award restitution. It was the temporal allegation in the indictment. And, you know, we have various instances of the same basic analysis with regard to other elements, sometimes as a categorical matter. For that point, I would bring up Penn. There you have a 922G1 case where the defendant is ordered to pay restitution for a shootout that occurs while he's possessing the gun that he's not allowed to have. And this court found that because the offense only went to possession and possession was not fairly tied to those losses, there could be no restitution. Now, with regard to 2259, specifically C-4, we don't have any authority from this court yet on the question of an indictment's allegation circumscribing the district court's authority to impose restitution, but I did cite a district court case from the Northern District of Georgia in my initial brief, United States v. Sanders. It's a 2014 opinion that came out right after Paroline, where the defendant pleaded guilty to possessing images of child pornography. The interstate nexus allegation was that he had downloaded the images, had moved through interstate commerce when he downloaded them on his computer. During the post-plea investigation, the government realized that he had actually produced child pornography using his niece as well. And at sentencing, the government asked the district court to impose restitution based on his possession of the pictures of his niece on a separate material. Well, actually, it was the same material. And the district court turned down that invitation because the government could not prove up the specific interstate nexus that had been alleged with regard to the niece in the indictment. So the images he downloaded, everyone agreed he had moved through interstate commerce as soon as he had downloaded them over the internet. The government tried to shift its theory of guilt by saying that, well, the possession of the pictures of the niece was on a phone that had been mailed or shipped in interstate commerce, and the district court said, no, we can't do that. Isn't she saying there's no shift here? There is a shift here, Your Honor. The statute said the element was proven when material containing child pornography. And I would think then you'd move for a bill of particulars and say, well, what bill, what pornography are we talking about? No need for a bill of particulars here, Your Honor, given the specificity of those allegations. And I actually would like to, again, just make an additional point regarding the various references in the record that refer the guilty plea back to the indictment's allegations. So we have at the guilty plea hearing, district court reads the element, it reads that first element, which again contains two subparts, both material and images of child pornography, and explains that the element is that he possessed the material that contained the images as alleged in the indictment. We see that same language in the factual resume as well. And last, Your Honors, I'd like to address Bailey because the facts of Bailey are incredibly different, and I ought to know, I represented Mr. Bailey at the district court level and on appeal. There we have a remarkably broad indictment for possession of stolen mail matter. The indictment was broad as to temporal scope. It was October 1, 2017 to November 30, 2017. And pardon me, it was not an indictment as an information, but the information did not specify a single piece of stolen mail. It just said that he possessed multiple plural pieces of stolen mail. The factual resume tracked those indictments and then listed one piece of stolen mail as an example. So that's a difference from what we have here. We don't have a broadly worded indictment that we then see specified later on in a factual resume, and I don't think there's any way to fairly read the indictment to— Is she right that when the PSR comes out, there are multiple other provisions that did incorporate the $28,000, and there was no objection to those? She is, Your Honor, but that's irrelevant because for guideline purposes we have relevant conduct, which allows us to go beyond the specific offense alleged. That's right, and at that point— Restitution has got to be victims of the offense. Exactly right, Your Honor. Restitution is circumscribed in a way that relevant conduct— But the PSR, I thought, recommended that your client be held responsible for possession of all the images in the phone for purposes of the guideline calculation. That's correct, Your Honor. But as your position, you were only indicted for possessing four images? Yes, Your Honor, that's correct. But there was no objection to the PSR? Nor would there need to be given the fact that the PSR is applying relevant conduct, which is a much broader concept in the scope of the indictment's allegations, or 2259-C-4's offense. But the crime that your client pleaded guilty to is possessing material, here the phone, that contained an image of child pornography. Your client pleaded to possession of the phone, correct? Judge Smith, my answer? I'm out of time. Judge Willett, he pleaded guilty to both. The indictment is very specific, and it alleges both the phone and the following described images. Those images are a closed universe, there are simply four, and we see a parallel structure between not just the indictment but the factual resume as well. And what Mr. Bopp is asking is this Court to recognize the importance of those allegations, the importance of that specificity, with regard to the District Court's authority toward restitution. Thank you, Your Honors. Thank you, Mr. Brown. Your case is under submission. Last case for today.